IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT
OF TEXAS AUSTIN DIVISION

| | |
|---|---|
| **MICHELLE D. GREEN,**<br><br>Plaintiff<br><br>vs<br><br><br>**CHARTER COMMUNICATIONS, LLC,**<br><br>Defendant | §§§§§§§§§§§§§§§<br><br>**JURY TRIAL DEMANDED**<br>Case No 1:23-cv-922 |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now comes MICHELLE D. GREEN, referred to herein as "Plaintiff" or "Ms. Green," complaining of CHARTER COMMUNICATIONS, LLC, hereinafter referred as "Defendant," and files this Original Complaint and for such would show the Court and Jury the following:

### SUMMARY OF THE COMPLAINT

1. This is a civil rights complaint for discrimination based on retaliation in violation of *Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) as amended (Title VII);* as well as violations of applicable state laws, including but not limited to *Chapter 21 of the Texas Labor Code, Texas Labor Code § 21.001 et seq. as amended (TLC) and the Texas Commission on Human Rights Act as amended (TCHRA).*

2. Ms. Green is an African American female who was employed as a retention specialist

at the Defendant's facility at 2433 Rutland Drive, Austin, Texas 78758 ("Rutland Drive Location").

3. On or about January 25, 2018 Ms. Green was interviewed as part of Defendant's investigation of allegations involving a retention supervisor. During the interview, Ms. Green told Defendant she was being sexually harassed by a retention supervisor. Ms. Green provided details including unwanted touching of her body by the retention supervisor.

4. On or about February 8, 2018, Defendant suspended Ms. Green alleging that she had violated the Defendant's policy regarding not discussing the investigation with others. Ms. Green asked for details regarding the alleged discussions and the suspension, but the Defendant refused to provide any further information.

5. February 9, 2018 Ms. Green filed a charge of discrimination against Defendant based on race, sex, retaliation, sexual harassment, intimidation and demotion (the "Charge"). In the Charge, Ms. Green described examples supporting the bases for the Charge. Ms. Green stated that the Defendant was very aggressive and threatening after she had disclosed that she was sexually harassed at the Rutland Drive Location. The Defendant's discriminatory actions included unsolicited sexual advances and improper sexually explicit phone calls, videos and texts messages. Ms. Green also stated that she was disciplined differently from a Caucasian female who had discussed one of Defendant's investigations. Ms. Green also stated that Defendant repeatedly harassed, sexually harassed, threatened, and intimidated Ms. Green.

6. In the Charge Ms. Green also stated that in 2017 she sought professional medical help due to the stress and intimidation of Defendant's sexual harassment, intimidation and retaliation. Ms. Green continued to use the professional services because of Defendant's hostile and toxic work environment.

7. Ms. Green returned to work on or about April 9, 2018. She quickly encountered various obstacles due to Defendant's acts and/or omissions. While on suspension her income dropped dramatically. When Ms. Green returned from the suspension Defendant had not correctly calculated her MAC pay bonus. Also, Defendant failed to provide Ms. Green with properly functioning computer equipment. The computer was the life blood of the retention specialist. Without a fully functioning computer, Ms. Green's income was negatively impacted. Ms. Green could not perform her job duties as directed by the Defendant.

8. Further, soon after Ms. Green returned from suspension, Defendant confronted her about a customer call from the previous year. The Defendant presumed Ms. Green had mishandled the call, but failed to provide Ms. Green with any details to enable Ms. Green to contest the Defendant's presumptions.

9. On or about May 1, 2018 Ms. Green filed an amended charge of discrimination (the "Amended Charge") adding discrimination due to Defendant's acts and/or omissions upon her return from suspension. Ms. Green stated that the Defendant was discriminating and retaliating against Ms. Green by not providing a functioning computer, not paying Ms. Green appropriately, and raising the December customer call issue without providing details to Ms. Green so that she could defend herself.

10. Ms. Green was extremely traumatized by the Defendant's sexual harassment, intimidation and toxic work environment. She continued to require professional assistance to manage the stress of the sexual harassment, intimidation and hostile work environment at the Rutland Drive Location.

11. Ms. Green was one of the most productive retention specialists at the Rutland Drive Location. After she filed the Charge and then the Amended Charge the work environment at the Rutland Drive Location became increasingly hostile. Also, the Defendant seemed concerned about

Ms. Green's interactions with Ms. Janaya West, the other African American retention specialist who Ms. Green knew had been suspended in February of 2018.

12. Around June 13, 2018 the Defendant tried to force Ms. Green to change her desk location. The Defendant never consulted Ms. Green about this change, and when Ms. Green challenged the proposal, including raising Americans With Disability Act and retaliation concerns, the Defendant abandoned its plan.

13. Ms. Green was concerned about the Defendant's tracker system. Specifically, she was keeping records that showed her tracking level was at one hundred percent (100%), but the next day the tracking level would be lower. On or about July 30, 2018 Ms. Green reported the problem to her supervisor, Mr. Derek Hawkins. On or about July 31, 2018 Mr. Hawkins reviewed Ms. Green's tracking performance and told her that she was tracking at the ninety percent (90%) level. He told Ms. Green that 90% was normal.

14. On or about September 2, 2018 Ms. Green was not able to access the tracker system. She complained to another supervisor, Breylan Roberts. Mr. Roberts was able to restore Ms. Green's access to the tracker system, but could not correct any tracking discrepancies.

15. On or about September 7, 2018 she, her manager and her supervisor met. Ms. Green was told that for a four month period she was missing 50 calls a month, including 98 disconnects. Ms. Green asked the Defendant for specific information about the calls. The Defendant would not provide specific information.

16. On September 24, 2018, the Defendant terminated Ms. Green's employment alleging that she failed to properly track calls and did not disconnect a customer's account when the customer asked her to do so.

17. On October 29, 2018 Ms. Green filed a charge of discrimination against the Defendant based on retaliation (the "Retaliation Charge"). Her termination was in retaliation for the Charge, the Amended Charge and her complaints to the Defendant. Ms. Green was terminated for exercising her protected activities.

## JURISDICTION AND VENUE

18. states, and the amount in controversy exceeds $75,000. Accordingly, jurisdiction is properly based on diversity of citizenship under 28 U.S.C. § 1332, as amended.

19. Jurisdiction is also based on federal questions under 28 U.S.C. § 1331 to the extent Plaintiff asserts claims under applicable Federal and state law; including but not limited to, *Title VII of the Civil Rights Act of 1964 as amended (Title VII)*.

20. Jurisdiction of Ms. Green's claims under the applicable state laws, including but not limited to the *Texas Labor Code as amended (TLC),* is also appropriate under *28 U.S.C. § 1367, as amended*, since the state law causes of action are so related to the federal claims in the action within the Court's original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution.

21. At all times relevant to this cause of action, Ms. Green was an "employee" of the Defendant and Defendant was an "employer," as these terms are defined under *Title VII, 42 U.S.C. § 1981 as amended*, and *Chapter 21 of the TLC as amended*. Ms. Griffin has exhausted the administrative remedies as required by law and as hereinafter stated.

22. A substantial portion of the causes of action complained of herein occurred at the Rutland Drive Location in Travis County, Texas.

## PARTIES

23. Ms. Green is an African American female who resides in the State of Texas.

24. The Defendant is a foreign limited liability company authorized to do business in the state of Texas.

25. The Defendant has a corporate office at 12405 Powerscourt Drive, St. Louis, MO, 63131, and a place of business at 2433 Rutland Drive, Austin, Texas 78758 (the "Rutland Drive Location").

26. The Defendant can be properly served with this citation by serving its registered agent, Corporation Service Company, dba CSC - Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## PROCEDURAL BACKGROUND

27. Ms. Green has satisfied all prerequisites to this suit, including exhausting all required administrative remedies with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission Civil Rights Division (TWCCRD) has satisfied all prerequisites to this suit, including exhausting all required administrative remedies.

28. The EEOC issued a Notice of Right to Sue to Plaintiff on May 11, 2023. A true and correct copy of that notification is attached hereto as **Exhibit A**.

29. This Complaint is being filed within the ninety (90) days of Ms. Green's receipt of the EEOC Notice of Right to Sue.

## FACTS

30. Ms. Green was employed as a retention specialist at the Defendant's Rutland Drive Location. A retention specialist handles customer calls involving the Defendant's services with the goal of trying to retain the account customer, or expand the services being used by the account customer.

31.     Ms. Green began working at 2433 Rutland Drive location when Time Warner Cable operated that facility.

32.     On information and belief, in or about 2016, Charter Communications, Inc. acquired Time Warner Cable.

33.     On information and belief, the 2433 Rutland Drive location became part of the Defendant after the acquisition of Time Warner Cable by Charter Communications, Inc.

34.     Ms. Green had been the victim of harassment, sexual harassment, and intimidation by her supervisors at the Rutland Drive facility starting in or around February of 2014 and continued until about January of 2018.

35.     Ms. Green was one of the most productive retention specialists at the Rutland Drive Location.  In November of 2017, the Defendant selected Ms. Green to be one of two key mentors. A mentor assists other retention specialists in handling customer calls. Also, a mentor works unlimited overtime hours which has a substantial effect on a mentor's compensation.

36.     From December 2017 to about January 19, 2018, the Defendant selected Ms. Green to be an interim supervisor.  The general practice at the Rutland Drive Facility was for an interim supervisor to be promoted to a supervisor.

37.     Ms. Green received strong compliments while serving in the interim supervisor role.  Then without any explanation on or about January 18, 2018 the Defendant told Ms. Green to return to the retention specialist role.  In addition, the Defendant required Ms. Green to assist the male who had been selected to be her supervisor in performing his supervisory tasks.  These facts demonstrate that the more qualified female candidate, Ms. Green, was not promoted to the supervisory position.

38. On or about January 25, 2018 Ms. Green met with the Defendant during the Defendant's investigation of a matter. Ms. Green was asked about discrimination, harassment, intimidation, retaliation and sexual harassment at the Defendant. Ms. Green told the Defendant of her harassment, sexual harassment, retaliation, and discrimination by the Defendant.

39. On or about January 30, 2018 Ms. Green was called into a meeting with the Defendant. The Defendant was yelling at Ms. Green and accusing Ms. Green of discussing the Defendant's investigation. Ms. Green asked for more specific details about the Defendant's claims. The Defendant failed to provide the detail Ms. Green requested. Ms. Green told the Defendant about the Defendant's discrimination, harassment, intimidation, retaliation and sexual harassment of her. When the Defendants continued aggressively pressuring Ms. Green, Ms. Green said the Defendant was threatening her. Ms. Green recalls one of the Defendant's representatives saying they were threatening her. Ms. Green was very upset and intimidated by Defendant's actions.

40. On February 8, 2018, Ms. Green met with the Defendant. She was suspended. The Defendant claimed that she had discussed the investigation. Ms. Green once again questioned the Defendant about its position, and asked for specific information. The Defendant refused to answer Ms. Green's questions. Ms. Green told the Defendant that its decision was based on hearsay.

41. Ms. Green filed the Charge on February 9, 2018.

42. On or about March 3, 2018 Ms. Green met with the Defendant. For the third time Ms. Green told the Defendant about the sexual harassment, intimidation and retaliation that she had experienced. Ms. Green also told the Defendant about a non-African American employee at the Rutland Drive Location who Ms. Green understood had discussed the investigation. She also told the Defendant that she understood the non-African American employee provided a recording

of that employee's interview with the Defendant to one of the individuals under investigation. On information and belief, the employee was not suspended.

43. Defendant's failure to discipline the non-African American employee in the same fashion as Ms. Green was disciplined strongly suggests that the Defendant had arbitrary and disciplinary practices that were discriminatory and retaliatory.

44. Ms. Green returned to work on or about April 9, 2018, however the work environment was very different from the one she experienced prior to January 19, 2018. For example, Ms. Green did not have a fully functioning computer. She could not login to her computer. Ms. Green reported the problem to her supervisor. The Defendant told Ms. Green it would be between two (2) days to a week before her computer was working. A retention specialist cannot handle calls without a fully functioning computer. Consequently, the retention specialist cannot perform his or her duties, including increasing the Defendant's revenue. Moreover, the retention specialist's income is adversely affected. Due to Ms. Green not having a fully functioning computer, Ms. Green's compensation suffered.

45. Ms. Green encountered problems with the Defendant calculating and paying a bonus called MAC pay. Defendant had given Ms. Green assurances about the amount she was to receive but failed to perform.

46. Shortly after Ms. Green returned to the office in April of 2018 Ms. Green saw her supervisor, the Workforce Specialist and the Retention manager huddled together in a discussion. Ms. Green's supervisor than approached her and said there was a problem. Ms. Green's supervisor said that there was a customer complaint involving a call that Ms. Green had handled in December of 2017. This came as a shock to Ms. Green because of the passage of time. When Ms. Green asked for the details, the Defendant did not provide any specifics. The supervisor simply said that the complaint had

been taken care of.  Ms. Green wondered why the matter had not been brought up in December of 2017 or January of 2018.  This encounter occurred after Ms. Green had submitted the Charge.

47. In a short span of time after Ms. Green returned from suspension, Ms. Green was a target of various retaliatory actions by the Defendant.

48. Ms. Green filed an Amended Charge on May 1, 2018, adding claims describing the incidents of retaliation, including the issues with her MAC pay, Defendant's failure to provide a working computer, and the alleged customer complaint from December of 2017.

49. Ms. Green tried to focus on her job duties.  However, on or about May 29, 2018 Ms. Green noticed that her priority in the shift bid list was not correct.  The lower your number on the list, the better chance you have to get the shift you want.  Ms. Green often had a very low number on the shift bid list.  She immediately talked to her then supervisor.  She also asked for a meeting with the Director of Retention, to discuss the matter.   Later that day the Director of Retention told Ms. Green that she was correct, and that there was a problem with the shift bid listing.  On or about May 31, 2018 the Director of Retention told Ms. Green that the problem had been corrected.  Ms. Green's standing improved from 75 out of 225 to 45 out of 225.

50. On or about June 12, Ms.  Green's then manager, Mr. Iba Sambe, told her that she could no longer work Monday through Friday, from 8:00 am to 5:00 pm because she would be working on a day when her then supervisor was not working.  Ms. Green's manager and supervisor did not tell her of any issues with her working this shift until she started visiting with another retention specialist named, Janaya West.  Further Ms. Green recalls other retention specialists working when their supervisors were not working.  It was after Ms. Green's meetings with Ms. West that the Defendant told Ms. Green that she had to move her desk.  The proposed new desk location was closer to individuals about whom Ms. Green had complained to the Defendant's

Human Resources department and/or in the Charge or the Amended Charge.  Ms. Green feared that these individuals might retaliate against her.

51.     Ms. Green challenged the proposed desk relocation.  She raised her disability, and that the relocation that Defendant proposed would violate her rights under the American With Disabilities Act and was retaliatory.  The Defendant abandoned its plan and Ms. Green remained at her desk location.

52.     Ms. Green tried to focus on doing her job, however in July of 2018, she noticed problems with Defendant's tracker system.

53.     The Defendant was aware that its tracker system was unreliable.  As late as July 27, 2018 the Defendant sent out an email update noting that it was still working on the tracking system.  The tracker email update was sent to retention specialists, and stated that "In some cases, the App Bar will auto-populate the account number…."  In effect the Defendant conceded that prior to the July 27 update, the tracker system did not auto-populate account numbers in 100% of the cases.  Since the tracker did not automatically enter the account number, then the Defendant's tracker system  was not tracking all of the calls.  The email of July 27, 2018 advised retention specialists that they needed to take certain steps to enter the required information.

54.     On or about July 30, 2018 Ms. Green emailed her then supervisor, Mr. Derek Hawkins, because she was having tracker problems.  She explained that at the end of her shift her tracker logged 100% of the calls.  However, when she logged in the next day, the tracker stated her tracking was substantially lower, and did not register 100% tracking of calls.  Ms. Green told Derek Hawkins that that was impossible.  Mr. Hawkins said that when he reviewed Ms. Green's Charter Communications OIC information, she was registering at 90% tracking which he said was in the normal range.  He said he would look into the problem of the tracker not showing on the

reporting side of things.

55. Ms. Green also reported her tracker problems to Mr. Breylan Roberts, another supervisor at the Rutland Drive Location. On or about September 2, 2018 Ms. Green could not even access the tracker system. Mr. Roberts came to Ms. Green's desk to fix this tracking problem. Ms. Green made notes of her tracking percentage because the Defendant's tracker system did not allow retention specialists to go back into the tracker system to make any corrections. Mr. Roberts corrected the problem Ms. Green was having with accessing the tracker system, but he could not correct the discrepancies Ms. Green reported.

56. On or about September 7, 2018 at a meeting among Ms. Green, her manager, Al Escaname, Jr., and her supervisor, Katie Richardson, Mr. Escaname stated that in a 4-month period Ms. Green was missing 50 calls per month, and she had missed 200 calls, 98 of which were disconnected calls. Ms. Green asked for more details, including specifics on when the calls were a problem, and which months were involved. Mr. Escaname did not answer her questions. In fact, Mr. Escaname's information was totally inconsistent with the information Mr. Hawkins gave Ms. Green concerning her 90% tracking rate in July. Ms. Green also asked Mr. Escaname why the system could register 100% daily, but monthly there are 50 missing calls. Mr. Escaname could not explain these problems. He could not even explain how the tracker system worked.

57. In addition, during May, June, July, and August, Ms. Green had weekly coaching sessions with her supervisors, including Katie Richardson. None of them mentioned to Ms. Green that she was missing 50 calls a month or having issues with disconnects.

58. On September 24, 2018, notwithstanding the known problems with the tracker system, Mr. Escaname summarily terminated Ms. Green. She was not given any detail as to the basis for the termination. She was only told that she was not tracking calls and had disconnects.

In fact, Ms. Green had tracked calls and had a daily tracking rate of 100%. Later the tracking rate was lower. In late July 2019 and early September 2018 Ms. Green complained about the discrepancies, but no one was able to correct the issue. It is all the more troubling that the Defendant conducted a secret so called audit of Ms. Green, rather than correct the tracker problems of which Ms. Green had complained.

59. Ms. Green engaged in a protected activity when she filed the Charge, the Amended Charge and complained to Defendant. The Defendant knew of the Charge, the Amended Charge and Ms. Green's complaints that Defendant's actions were retaliatory. Ms. Green was terminated on September 24, 2018 because she engaged in the protected activities noted above.

60. These violations are causes of action under applicable Federal and state laws and regulations. Ms. Green seeks a jury trial to recover all damages, including back pay, front pay, compensatory damages, punitive damages, and other damages as deemed appropriate by this Court, including attorneys' fees.

## CAUSE OF ACTION
## TITLE VII DISCRIMINATION BASED ON RETALIATION

61. Plaintiff hereby incorporates by reference paragraphs one (1) through and including sixty (60) of this Complaint as though fully set forth herein.

62. Plaintiff is a member of a protected class as she is an African American female.

63. Plaintiff engaged in a protected activity by filing the Charge.

64. Plaintiff was an "employee" and Defendant was an "employer" as those terms are defined under applicable Federal and state laws, including *Title VII of the Civil Rights Act of 1964, as amended*, and *Chapter 21 as amended of the TLC*, and *TCHRA as amended*. Defendant

employed more than fifteen (15) employees at all times relevant to this suit.

65. Defendant discriminated against Plaintiff as described above, including retaliating against Plaintiff because of her filing the Charge and the Amended Charge, and wrongfully terminating her employment claiming that she was not tracking calls.

66. Defendant's actions were taken with a willful and wanton disregard of Plaintiff's rights under Title VII.

67. Defendant's actions were violations of applicable Federal laws, including *Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) as amended (Title VII),* as well as violations of applicable state laws, including but not limited to *Chapter 21 of the Texas Labor Code*, *Texas Labor Code § 21.001 et seq. as amended (TLC) and the Texas Commission on Human Rights Act as amended (TCHRA).*

68. As a direct and proximate result of Defendant's unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Plaintiff has suffered humiliation, degradation, emotional distress, other consequential damages and lost wages and benefits. Defendant's failure to follow the requirements of the applicable Federal and state laws resulted in damages as hereinafter set forth.

## PRAYER

WHEREFORE, Plaintiff prays that this Court:

A. Enter Judgement in favor of Plaintiff and against the Defendant for violation of Plaintiff's rights under Title VII, Chapter 21 of the Texas Labor Code and the TCHRA;

B. Declare that the actions of the Defendant constituted unlawful discrimination;

C. Award Plaintiff compensatory damages, including, but not limited to, lost wages

and benefits, in such amount as will reasonably compensate her for her losses and damages for emotional distress;

D. Award Plaintiff punitive damages in such amount as the Court deems proper;

E. Award Plaintiff here costs, attorneys' fees, and non-taxable expenses in this action, and

F. Grant Plaintiff such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff hereby respectfully demands a trial by jury pursuant to Federal Rules of Civil Procedure 38(b) on all issues so triable.

Dated:  August 5, 2023

Respectfully submitted,

**BEARD KULTGEN BROPHY BOSTWICK & DICKSON, PLLC**

220 South 4th Street
Waco, Texas 76701
(254) 776-5500
(254) 776-3591 - Fax Number
Email- peek@thetexasfirm.com

*/s/ Gail L. Peek*
**Gail L. Peek**
Texas State Bar No. 24028749

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

      This is to certify that a true and correct copy of the above and foregoing document has been served on Defendant CHARTER COMMUNICATIONS, LLC on this the 5th day of August, 2023 by means of the CM/ECF system of this Court.

*/s/ Gail L. Peek*

**Gail L. Peek**
